UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 13-62698-CIV-COHN/SELTZER

ZACHARY FLAMBERG,

    Plaintiff,

v.

SCOTT J. ISRAEL, in his official capacity as
Sheriff of Broward County, Florida,

    Defendant.
_____/

## ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO DISMISS

**THIS CAUSE** is before the Court upon Defendant's Motion to Dismiss Plaintiff's Complaint [DE 17] ("Motion"). The Court has considered the Motion, Plaintiff's Opposition [DE 22], and Defendant's Reply [DE 25], and is otherwise advised in the premises.

### I.  BACKGROUND

This action arises from discrimination, retaliation, and other wrongs Plaintiff Zachary Flamberg allegedly suffered at the hands of the Broward County Sheriff's Office ("BSO"), of which Defendant Scott J. Israel is the senior officer. Flamberg is a former BSO employee. Flamberg worked for the BSO as an information-technology professional for over a decade, until July 2012. DE 1 ¶¶ 9, 29. In this position, Flamberg received positive performance evaluations, salary increases, and promotions. Id. ¶ 10.

Flamberg contracted lymphoma, however, and in late 2011 he took FMLA-protected leave from work to seek treatment. Id. ¶ 11. Flamberg returned from FMLA leave in January 2012. Id. ¶ 13. Flamberg alleges that upon his return to the BSO, he

suffered discrimination, harassment, and retaliation by his supervisors and colleagues, because these individuals regarded him as mentally disabled and because he had taken FMLA leave. Id. ¶¶ 13, 102, 129.

In February 2012, one of Flamberg's supervisors allegedly suspended him from work because he was "mentally unstable." Id. ¶ 14. The BSO's human-resources department ordered Flamberg to meet with a BSO psychologist during his suspension. Id. ¶ 17. The psychologist evaluated Flamberg, and referred him to a psychiatrist for medication. Id. ¶¶ 18–21. Shortly thereafter, Flamberg complained to human-resources personnel that he felt he had suffered discrimination because he was regarded as having a mental disability. Id. ¶ 27.

The BSO subsequently offered Flamberg a transfer from his prior division to the Enterprise Technology Division ("ETD"). Id. ¶ 29. Flamberg accordingly reported for work with the ETD on March 1, 2012. Id. ¶ 30. Around this time, however, an ETD supervisor told Flamberg's new colleagues that Flamberg was "unstable" and should be kept away from other people. Id. ¶ 60. This same supervisor allegedly apologized to his staff for assigning Flamberg to work with them. Id. ¶ 61.

Flamberg contends that he endured substantial harassment at the hands of his new ETD colleagues because of the perception that he suffered a mental disability. Id. ¶ 31. For example, Flamberg's colleagues joked that, if Flamberg "went nuts," he would shoot another co-worker. Id. ¶ 72. Flamberg alleges that he received a threatening note from one of these individuals suggesting that he "watch his back." Id. ¶ 32. In another incident central to Flamberg's claims, a pair of Flamberg's colleagues told the BSO that Flamberg spoke about engraving a BSO officer's name onto a bullet, and that Flamberg

joked about a recent mass shooting at a movie theater in Aurora, Colorado, stating that he would "get it right" where the Aurora shooter had erred. Id. ¶¶ 36, 47. Flamberg asserts that he never made these statements. Id. ¶¶ 57–59. The BSO terminated Flamberg's employment on July 24, 2012, however, because the statements attributed to Flamberg violated the BSO's workplace violence policy. Id. ¶¶ 37–41.

Flamberg alleges that his suspensions, transfer, and termination were motivated by discrimination against him based upon his perceived mental disability. Flamberg also alleges that this chain of events began with retaliation for having taken FMLA leave. Flamberg brings eight claims on this basis against Defendant in his official capacity: (1) disability discrimination under the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101, et seq.; (2) disability retaliation under the ADA; (3) wrongful disclosure of medical information under the ADA; (4) hostile work environment under the ADA; (5) retaliation under the Family and Medical Leave Act ("FMLA"), 29 U.S.C. § 2601, et seq.; (6) disability discrimination under the Florida Civil Rights Act ("FCRA"), Fla. Stat. § 760.01, et seq.; (7) disability retaliation under the FCRA; and (8) hostile work environment under the FCRA. DE 1 ¶¶ 98–144. Defendant has moved to dismiss, arguing that Flamberg lacks an adequate factual basis to support each of his claims. DE 17.

## II.   LEGAL STANDARD

Under Federal Rule of Civil Procedure 12(b)(6), a court shall grant a motion to dismiss where the factual allegations of the complaint cannot support the asserted cause of action. Glover v. Liggett Group, Inc., 459 F.3d 1304, 1308 (11th Cir. 2006) (per curiam). "Factual allegations must be enough to raise a right to relief above the speculative level . . . ." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007). The

allegations must give a defendant fair notice of the plaintiff's claims and the grounds upon which they rest. Id. Thus, a complaint must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Twombly, 550 U.S. at 570).

A complaint must be liberally construed, assuming the facts alleged therein as true and drawing all reasonable inferences from those facts in the plaintiff's favor. Twombly, 550 U.S. at 555. A complaint should not be dismissed simply because the court is doubtful that the plaintiff will be able to prove all of the necessary factual allegations. Id. A well-pled complaint will survive a motion to dismiss "even if it appears that a recovery is very remote and unlikely." Id. at 556 (internal quotation marks omitted). Nevertheless, a plaintiff must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Id. at 555.

## III. DISCUSSION

Defendant primarily argues that the Court should dismiss Flamberg's Complaint because Flamberg fails to provide sufficient detail regarding the facts underlying each of his claims. The Court agrees with Defendant that Flamberg's Complaint is sparsely pled and is not a model of clarity. Nevertheless, the Complaint contains sufficient facts, taken as true with all reasonable inferences drawn in Flamberg's favor, to support each of Flamberg's causes of action and give Defendant fair notice of Flamberg's claims. The Court will accordingly deny Defendant's request for dismissal with two exceptions. First, the Court will dismiss Flamberg's disability retaliation claims to the extent they are premised upon wrongdoing taking place before the acts that allegedly prompted the retaliation. Second, the Court will dismiss Flamberg's request for punitive damages under the FCRA, which are unavailable in this action as a matter of law.

### A. Count I: ADA Disability Discrimination

In his ADA discrimination claim, Flamberg alleges that he suffered discrimination because he was regarded as having a mental disability. Defendant argues that Flamberg has failed to state a discrimination claim because the Complaint does not link Flamberg's perceived disability to any adverse employment actions taken against him. DE 25 at 1–2.[1] Flamberg's Complaint, however, alleges that Defendant's personnel— including Flamberg's supervisors—regarded Flamberg as suffering a mental disability and mistreated him during his employment based on this perception. E.g., DE 1 ¶¶ 36–41, 57, 60, 102–04. Flamberg's suspension and transfer are components of this alleged mistreatment. Id. Moreover, Flamberg alleges that he was terminated as a result of false statements his antagonists made to the BSO's internal-affairs personnel. Id. ¶¶ 36–41, 47, 57–59. Taking Flamberg's allegations as true and drawing all inferences in his favor, the Court finds these allegations sufficient to draw a connection between his perceived disability and the adverse employment actions he suffered, and to withstand a motion to dismiss.

Defendant raises the more specific contention that Flamberg cannot premise his discrimination claim upon his termination because the decision to terminate him was ultimately made by an impartial decision-maker, and not his co-workers or direct supervisors. A plaintiff, however, may proceed on a discrimination claim arising out of

---

[1] Defendant also contends in the Motion that Flamberg's discrimination claim fails because BSO personnel did not regard Flamberg as having an impairment so serious that it substantially limited his major life activities. DE 17 at 9. As Defendant concedes in the Reply, however, this argument is without merit, because an individual regarded as having a disability may bring a discrimination claim regardless of "whether . . . the impairment . . . is perceived to limit a major life activity." 42 U.S.C. § 12102(3)(A); Hilton v. Wright, 673 F.3d 120, 129 (2d Cir. 2012) (per curiam).

5

an adverse employment action where the decision-maker himself was impartial if the decision-maker acted as a mere conduit for the actions of someone who did possess discriminatory motives. Barr v. City of Eagle Lake, No. 06-1568, 2008 U.S. Dist. LEXIS 20561 at *26 (M.D. Fla. Mar. 17, 2008).

Flamberg alleges that his termination, though approved by independent decision-makers within the BSO, resulted from a flawed investigation which gave force to the discriminatory motives and false statements of individuals who had antagonized him on the basis of his perceived disability. Construing these facts in the light most favorable to Flamberg, the Court finds that Flamberg has sufficiently alleged that the discrimination he suffered caused his termination, notwithstanding the presence of an impartial ultimate decision-maker. See Baiyasi v. Delta Coll., No. 11-13094, 2012 U.S. Dist. LEXIS 65715 at *36–38 (E.D. Mich. May 10, 2012) (denying defendant's motion for summary judgment on causation grounds where antagonist made statements to decision-maker allegedly resulting in plaintiff's termination). The Court therefore will deny the Motion as it pertains to Flamberg's ADA discrimination claim.[2]

## B. Count II: ADA Disability Retaliation

In the Motion, Defendant also argues that Flamberg has pled no facts linking any adverse employment actions to ADA-protected activity, thus Flamberg's ADA retaliation claim must be dismissed. A plaintiff claiming ADA retaliation must allege: (1) that he engaged in a protected activity; (2) that he suffered an adverse employment action; and

---

[2] The FCRA applies the same standards for liability on discrimination claims as the ADA. Greenberg v. BellSouth Telecomms., Inc., 498 F.3d 1258, 1264 (11th Cir. 2007) (per curiam). Because Flamberg has stated a claim for disability discrimination under the ADA, he has likewise sufficiently pled his discrimination claim under the FCRA.

6

(3) that the protected activity was causally connected to the adverse employment action. See Branscomb v. Sec'y of Navy, 461 F. App'x 901, 905 (11th Cir. 2012) (per curiam).

Here, Flamberg alleges that he complained of discrimination arising from being perceived as having a disability (DE 1 ¶¶ 27, 33–34) shortly before he suffered a number of adverse employment actions, such as his transfer to the ETD and his eventual termination (id. ¶¶ 28, 36–37). Flamberg alleges that these adverse employment actions were taken in retaliation for his complaints (id. ¶ 111), which constitute protected activity under the ADA, see Kinsey v. City of Jacksonville, No. 01-785, 2005 U.S. Dist. LEXIS 31870 at *19–20 (M.D. Fla. Dec. 6, 2005), aff'd, 189 F. App'x 860 (11th Cir. 2006). Drawing all reasonable inferences in Flamberg's favor, the Court finds these allegations sufficient to draw a connection at the pleading stage between Flamberg's ADA-protected complaints and the adverse employment actions he suffered shortly afterwards.

The Court notes, however, that some of the alleged adverse employment actions occurred prior to any of Flamberg's complaints of discrimination, such as his suspension from work in February 2012 and his referral for psychological evaluation. See DE 1 ¶¶ 14–27. Flamberg's complaints could not have caused the alleged acts of retaliation taking place before those complaints. Accordingly, Flamberg may proceed on his disability retaliation claim only insofar as it relates to adverse employment actions taken after his first complaints of disability discrimination.[3]

---

[3] The FCRA applies the same standard for liability as the ADA with respect to retaliation claims. Lyons v. Miami-Dade Cnty., 791 F. Supp. 2d 1221, 1226 (S.D. Fla. 2011), aff'd, 470 F. App'x 801 (11th Cir. 2012); Rodgers v. Time Customer Serv., Inc.,

### C. Count III: ADA Wrongful Disclosure of Confidential Medical Information

Defendant argues that Flamberg has failed to allege what specific confidential information was disclosed and how the disclosure injured him, thus he has failed to plead a claim for disclosure of confidential information. A plaintiff claiming wrongful disclosure of confidential medical information under the ADA must allege that: (1) the medical information that was disclosed was "confidential"; (2) the information released was obtained through an entrance exam or disability-related inquiry; and (3) he suffered a tangible injury as a result of the disclosure. Franklin v. City of Slidell, 936 F. Supp. 2d 691, 711 (E.D. La. 2013).

Flamberg alleges that a supervisor ordered him to see a mental-health professional in relation to concerns that Flamberg was "mentally unstable." DE 1 ¶¶ 14–21. Information arising from such inquiries must be treated as confidential. See 42 U.S.C. § 12112(d)(4). An ETD supervisor, however, apparently disclosed information regarding this mental-health inquiry to Flamberg's co-workers. DE 1 ¶¶ 60–65. Flamberg alleges that the resulting widespread impression that Flamberg was "unstable" and suffered from a mental disability led to his mistreatment in the workplace, culminating in his termination. Id. ¶ 116.

Taking these allegations as true and drawing all inferences in Flamberg's favor, the Court finds that Flamberg has alleged the existence of confidential medical information obtained through a disability-related inquiry, the disclosure of that

---

No. 10-263, 2011 U.S. Dist. LEXIS 58155 at *25–26 (M.D. Fla. May 5, 2011). Because the Court will allow Flamberg's ADA retaliation claim to proceed with regard to adverse employment actions taking place after he complained of disability discrimination, Flamberg may also proceed on Count VII of his Complaint for FCRA disability retaliation to the extent it is premised on adverse employment actions subsequent to his complaints.

information, and resulting tangible harms. Flamberg has therefore sufficiently pled his wrongful disclosure claim. See Franklin, 936 F. Supp. 2d at 711.

### D. Count IV: ADA Hostile Work Environment

Defendant argues that Flamberg's claim for a hostile work environment must fail because the harassment Flamberg allegedly suffered was insufficiently severe and pervasive. Defendant characterizes Flamberg's mistreatment as isolated incidents, "pranks/jokes," and "mere inconveniences." DE 17 at 16. The Court disagrees with Defendant that the alleged harassment was isolated and merely inconvenient. Instead, Flamberg claims that he was consistently ridiculed for his perceived mental disability and suffered from his colleagues' serious, oppressive conduct.

A plaintiff bringing a hostile work environment claim under the ADA must allege, among other things, that he suffered harassment that was sufficiently severe or pervasive to alter the terms and conditions of his employment and create an abusive work environment. Burgos v. Chertoff, 274 F. App'x 839, 842 (11th Cir. 2008) (per curiam). To meet this standard, "the workplace must be 'permeated with discriminatory intimidation, ridicule and insult.'" O'Donnell v. Punta Gorda HMA, LLC, No. 10-785, 2011 U.S. Dist. LEXIS 82179 at *9 (M.D. Fla. July 27, 2011) (quoting Miller v. Kenworth of Dothan Inc., 277 F.3d 1269, 1275 (11th Cir. 2002)).

Although Flamberg himself characterizes his alleged mistreatment as "pranks/jokes," the Court finds that the behavior set forth in the Complaint goes far beyond what a reasonable individual would consider to be a mere "joke." Flamberg alleges that one of his supervisors told Flamberg's co-workers that he was "unstable" and dangerous. Id. ¶ 60. Flamberg asserts that he was the victim of "several" instances of harassment arising from the resulting perception that he suffered from a mental

9

disability and had violent tendencies. Id. ¶ 31. Flamberg's colleagues joked that, if Flamberg "went nuts," he would shoot another co-worker. Id. ¶ 72. Flamberg received a threatening note, apparently from one of these individuals, suggesting that he "watch his back." DE 1 ¶ 32. Flamberg alleges that his co-workers also fabricated statements by Flamberg regarding threats of workplace violence, which ultimately led to Flamberg's termination. Id. ¶¶ 36–37, 57. These incidents are part of what the Complaint portrays as a drumbeat of oppressive, cruel, and harmful conduct by Flamberg's colleagues and supervisors going well beyond mere inconveniences. Accordingly, drawing all inferences in Flamberg's favor, the Court finds that Flamberg has alleged harassment of a sufficiently severe nature to support a claim for a hostile work environment under the ADA. See Miller, 277 F.3d at 1275.[4]

### E.  Count V: FMLA Retaliation

Defendant also argues that Flamberg has failed to plead a connection between FMLA-protected activity and adverse employment actions necessary to sustain his FMLA retaliation claim. To state a FMLA retaliation claim, Flamberg must allege that: (1) he availed himself of a FMLA-protected right; (2) he suffered an adverse employment action; and (3) there was a causal connection between his protected activity and the adverse employment action. Morgan v. Orange Cnty., 477 F. App'x 625, 628 (11th Cir. 2012) (per curiam).

Here, Flamberg alleges that shortly after he took FMLA-protected leave (DE 1 ¶ 11)—a FMLA-protected right, see DuChateau v. Camp Dresser & McKee, Inc., 822

---

[4] The elements of a claim for a hostile work environment under the FCRA are the same as those under the ADA. See Hodgetts v. City of Venice, 794 F. Supp. 2d 1265, 1272 (M.D. Fla. 2011). Accordingly, the Court will also allow Flamberg's FCRA claim for a hostile work environment to stand.

F. Supp. 2d 1325, 1338 (S.D. Fla. 2011)—he suffered resulting adverse employment actions, including suspensions, reference to a mental-health professional, a transfer, and termination (DE 1 ¶¶ 128–30). Taking all facts as true and drawing all inferences in Flamberg's favor, the Court finds that these allegations are sufficient to make out the elements of a FMLA retaliation claim.

### F. Punitive Damages

Defendant also challenges the sufficiency of Flamberg's Complaint insofar as Flamberg seeks punitive damages for his claims under the ADA and FCRA. Though the Court finds that it would be premature to dismiss Flamberg's request for punitive damages under the ADA, Defendant correctly asserts that punitive damages under the FCRA are unavailable in a suit against a state-government entity such as the BSO. Accordingly, the Court will dismiss Flamberg's request for punitive damages as it pertains to his FCRA claims.

#### i. ADA Punitive Damages

An ADA plaintiff may recover punitive damages if the defendant engaged in intentional discrimination and acted with "malice or reckless indifference" to the plaintiff's protected rights. 42 U.S.C. § 1981a(b)(1). Defendant argues that Flamberg has failed to allege that the BSO acted with malice or reckless indifference, thus Flamberg's request for punitive damages should be dismissed.

"Recklessness" within the context of section 1981a(b)(1) means a "serious disregard for the consequence of one's actions." EEOC v. W&O, Inc., 213 F.3d 600, 611 (11th Cir. 2000) (internal quotation marks omitted). In the discrimination context, the employer must have acted "in the face of a perceived risk that its actions will violate

11

federal law." Id. (internal quotation marks omitted). Egregious misconduct is evidence of such a state of mind. Id.

Taking the allegations of the Complaint in the light most favorable to Flamberg, the Court finds that Flamberg has pled a sufficient basis for punitive damages under the ADA. Flamberg's allegations paint a portrait of a hostile workplace in which colleagues made sport of his perceived mental disability. Flamberg alleges that this behavior continued unabated for some time. It would be reasonable to infer that Flamberg's supervisors knew that they could not legally participate in harassing or discriminating against one of their employees. Nevertheless, if Flamberg is to be believed—as he must be for purposes of a motion to dismiss—Flamberg's supervisors encouraged and participated in the discrimination against him. The Court finds these factual allegations sufficient to support an inference that the BSO acted with reckless indifference to Flamberg's rights. Flamberg has accordingly pled sufficient facts to support his claims for punitive damages under the ADA at this early stage of litigation.

    ii.   **FCRA Punitive Damages**

Florida law prohibits the award of punitive damages in FCRA actions against the State of Florida and its subdivisions. Fla. Stat. § 760.11(5). Because Flamberg has sued Defendant in his official capacity as head of the BSO, an agency of one of Florida's subdivisions, FCRA punitive damages are unavailable. See generally Schedrick v. Dist. Bd. of Trs. of Miami-Dade College, 941 F. Supp. 2d 1348, 1360–62 (S.D. Fla. 2013) (noting that punitive damages are barred against Florida's governmental entities under the FCRA). The Court therefore will dismiss those portions of the Complaint seeking a remedy of punitive damages on Flamberg's FCRA claims.

IV. **CONCLUSION**

In short, Flamberg has sufficiently pled each of his causes of action to survive a motion to dismiss. Nevertheless, the Court will dismiss Flamberg's disability retaliation claims to the extent they are premised on adverse employment actions taking place prior to his first complaints of discrimination. Because punitive damages are unavailable against Defendant under the FCRA, the Court will also dismiss Flamberg's requests for punitive damages only as they pertain to his FCRA claims. It is accordingly

**ORDERED AND ADJUDGED** as follows:

1. Defendant's Motion to Dismiss Plaintiff's Complaint [DE 17] is **GRANTED in part**.

2. Plaintiff's claims for disability retaliation under the ADA and the FCRA are **DISMISSED without prejudice** only to the extent they are premised upon adverse employment actions occurring prior to Plaintiff's first alleged complaints of discrimination.

3. Plaintiff's claims under the FCRA are **DISMISSED with prejudice** only to the extent they seek punitive damages.

4. Defendant's Motion to Dismiss Plaintiff's Complaint is **DENIED in all other respects**.

**DONE AND ORDERED** in Chambers at Fort Lauderdale, Broward County, Florida, this 21st day of April, 2014.

JAMES I. COHN
United States District Judge

Copies provided to:
Counsel of record via CM/ECF